IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EARL BROWNLEE, | ) | |
|     Plaintiff | ) | C.A. No. 12-322 Erie |
| | ) | |
| v | ) | |
| | ) | Magistrate Judge Baxter |
| SHIRLEY R. MOORE-SMEAL, et al., | ) | |
|     Defendants | ) | |

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter

## I. INTRODUCTION

### A. Relevant Procedural History

On December 26, 2012, Plaintiff Earl Brownlee, an inmate formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"),[2] initiated this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 [ECF No. 6]. Plaintiff subsequently filed an amended complaint on August 16, 2013 [ECF No. 31], and a second amended complaint on October 25, 2013 [ECF No. 41], the latter of which is deemed to have superseded the prior two complaints and is the operative pleading in this case.

Named as Defendants in the second amended complaint are: Shirley R. Moore-Smeal, Executive Deputy Secretary of the Pennsylvania Department of Corrections ("DOC"); Michael

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 3, 28, 29, 30).

[2] Plaintiff is currently incarcerated at the State Correctional Institution at Greene in Waynesburg, Pennsylvania.

1

Harlow, Superintendent at SCI-Albion; SCI-Albion corrections officers Captain Randy Irwin, Lieutenant John Pivetta, Lieutenant Mark Edmunds, Sergeant Joshua Moore, CO-1 Jerrold Twentier, CO-1 Richard Bernardo, CO-1 Frederick Munch and CO-1 Jeffrey Newell; SCI-Albion registered nurses Don Lucore and Maxine Overton; Pennsylvania Board of Probation and Parole Agent John Williams; Dr. Mark Baker ("Baker"), a physician under contract with the DOC to provide medical services to inmates at SCI-Albion; Pamela Reynolds ("Reynolds"), a physical therapist under contract with the DOC to provide physical therapy to inmate at SCI-Albion; Physician Assistant "Telega;" and several unnamed Defendants.

In his second amended complaint, Plaintiff alleges that Defendants violated his rights under the first, eighth, and fourteenth amendments to the United States Constitution. All Defendants filed motions to dismiss the second amended complaint on various grounds. [ECF Nos. 42, 44, 47]. On July 1, 2014, this Court issued an Opinion & Order dismissing all of Plaintiff's claims other than his Eighth Amendment claims against Defendants Baker and Reynolds for deliberate indifference to Plaintiff's serious medical needs. [ECF No. 50]. All other Defendants have been terminated from this case.

The remaining parties have since completed discovery and, on March 19, 2015, Defendants Reynolds and Baker each filed a motion for summary judgment [ECF Nos. 55 and 59, respectively]. Despite having been granted more than ample time to file a response to each of these motions, Plaintiff has failed to do so. This matter is now ripe for consideration.

**B.     Relevant Factual History**[3]

On October 16, 2010, while at SCI-Albion, Plaintiff was extracted from his cell and taken to the Restricted Housing Unit ("RHU") after reportedly having a razor blade and threatening to harm himself. (ECF No. 61, Defendant Baker's Concise Statement, at ¶ 8). On October 21, 2010, Defendant Baker evaluated Plaintiff for right shoulder pain, at which time he ordered an x-ray of the shoulder and prescribed Motrin for pain. (Id. at ¶ 9). The x-ray was completed on October 29, 2010, and Plaintiff was re-evaluated on the same day by Defendant Baker, who discontinued the Motrin and replaced it with prescription Voltaren. (Id. at ¶¶ 10-11).

Plaintiff was subsequently evaluated by Dr. Greer via an orthopedic telemedicine clinic on December 3, 2010. (Id. at ¶ 12). Based on Dr. Greer's recommendations, Defendant Baker ordered an MRI of Plaintiff's right shoulder, as well as a 30-day prescription of Voltaren. (Id. at ¶ 13). That same day, Defendant Baker also submitted a request for a physical therapy consultation to address range of motion and strengthening of Plaintiff's right shoulder, which was approved by the State Medical Director on December 8, 2010. (Id. at ¶ 14). An MRI of Plaintiff's right shoulder was subsequently performed on March 3, 2011 at Meadville Medical Center, and revealed the appearance of a focal labral tear along the anterior labrum. (Id. at ¶ 15).

On March 17, 2011, Plaintiff was scheduled for a physical therapy evaluation with Defendant Reynolds, but failed to appear since he was still housed in the RHU. (Id. at ¶ 16). On March 25, 2011, Plaintiff had a follow-up orthopedic telemedicine clinic with Dr. Greer, who

---

[3] The facts recited herein have been gleaned from the concise statements of undisputed material facts filed by both Defendants Reynolds and Baker [ECF Nos. 57 and 61, respectively], neither of which has been opposed by Plaintiff.

reviewed Plaintiff's MRI and recommended physical therapy, as well as continuation of prescription Voltaren for another 30 days. (Id. at ¶¶ 17-19).

On April 14, 2011, Plaintiff was seen by Defendant Reynolds for a physical therapy evaluation, during which Plaintiff was given restrictions on shoulder movement and provided physical therapy exercises to perform on his own. (ECF No. 57, Defendant Reynolds' Concise Statement, at ¶¶ 28-32). In addition, Defendant Reynolds recommended that Plaintiff return to the medical unit three times a week for moist heat treatment and light weight exercises. (Id. at ¶ 33). In response to Defendant Reynolds' recommendations, Defendant Baker ordered that Plaintiff receive moist heat on his right shoulder and perform strengthening exercises at the medical unit three times a week. (Id. at ¶¶ 37-38). In addition, Defendant Baker ordered a follow-up consult with Defendant Reynolds in one to two months. (Id. at ¶ 39). Plaintiff was scheduled for physical therapy on Mondays, Wednesdays, and Fridays, beginning April 17, 2011; however, due to his placemen in the RHU, Plaintiff was not available for the scheduled therapy sessions. (ECF No. 61, Defendant Baker's Concise Statement, at ¶¶ 22-23).

Defendant Reynolds was at SCI-Albion on May 20, 2011 and June 21, 2011, for her monthly physical therapy visits, but Plaintiff was not included on the list of inmates she was scheduled to see on those dates. (ECF No. 57, Defendant Reynolds' Concise Statement, at ¶¶ 42-43). In addition, Defendant Reynolds never received any request slips from SCI-Albion advising that Plaintiff requested physical therapy treatment. (Id. at ¶ 44). Plaintiff was scheduled to see Defendant Reynolds on July 12, 2011, but failed to appear for the appointment. (Id. at ¶¶ 45-46). In the meantime, Defendant Baker resigned from his position at SCI-Albion in July 2011, and

4

was no longer involved in Plaintiff's care and treatment after that time. (ECF No. 61, Defendant Baker's Concise Statement, at ¶ 24).

Defendant Reynolds returned to SCI-Albion on August 17, 2011, for her monthly physical therapy visit, but Plaintiff was not included on the list of inmates she was scheduled to see that day. (ECF No. 57, Defendant Reynolds' Concise Statement, at ¶¶ 49-50). Defendant Reynolds next saw Plaintiff for a physical therapy consult on September 9, 2011, at which time she noted that Plaintiff's shoulder pain had increased, while his range of motion had decreased since his last evaluation on April 14, 2011. (Id. at ¶¶ 51-52). As a result, she recommended that Plaintiff return to see the orthopedic surgeon. (Id. at ¶ 53). Defendant Reynolds did not see Plaintiff again after the September 9, 2011, consult. (Id. at ¶ 55).

### C. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). A Plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C.Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court

6

should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### **2.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (Apetition prepared by a prisoner... may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### **D.** **Discussion**

In the medical context, a constitutional violation under the Eighth Amendment occurs

only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[4] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

---

[4] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

### 1. Defendant Reynolds

Plaintiff's claim of deliberate indifference against Defendant Reynolds rests solely upon his allegation that she failed to provide him a "timely follow-up" visit within 90 days after his first consult with her on April 14, 2011. (ECF No. 41, Second Amended Complaint, at ¶¶ 67, 81). However, the record reveals that Plaintiff was scheduled to visit with Defendant Reynolds on July 12, 2011, but failed to show for the appointment. (ECF No. 58-3, Physical Therapy Records, at p. 6). There is no countervailing evidence of record that would demonstrate that Defendant Reynolds consciously disregarded Plaintiff's physical therapy needs or purposely delayed his treatment. Indeed, the evidence indicates that Plaintiff was solely responsible for the alleged delay in care by failing to appear for his follow-up visit. Thus, summary judgment will be entered in favor of Defendant Reynolds on this claim.

### 2. Defendant Baker

Plaintiff's claim of deliberate indifference against Defendant Baker more broadly states that, though Defendant Baker "ordered the corrective treatment of physical therapy for [Plaintiff's] injured shoulder, [Plaintiff] was not provided physical therapy," which caused his shoulder condition to worsen. (Id. at ¶ 62). This allegation is simply incorrect.

The record indicates that on December 3, 2010, Defendant Baker ordered physical

9

therapy for Plaintiff to address range of motion and strengthening of his right shoulder. This order was approved by the State Medical Director on December 8, 2010; however, Plaintiff failed to appear at his first scheduled consult on March 17, 2011. Nonetheless, Plaintiff did receive a physical therapy consult with Defendant Reynolds on April 14, 2011, at which he was instructed on how to avoid moving the shoulder in ways that might cause further injury, and he was given specific exercises to perform on his own. In addition, Defendant Reynolds recommended that Plaintiff undergo a regimen of moist heat treatment and strengthening exercises three days per week in the medical unit. Defendant Baker promptly ordered the recommended regimen of physical therapy treatments to be conducted on Mondays, Wednesdays, and Fridays, beginning April 17, 2011. Unfortunately, Plaintiff was apparently unable to attend the majority of the scheduled physical therapy sessions because he was housed in the RHU. Plaintiff also failed to appear for his scheduled follow-up appointment with Defendant Reynolds on July 12, 2011. Defendant Baker has no control over Plaintiff's ability or decision to attend physical therapy sessions and appointments that were appropriately scheduled for him. Moreover, Defendant Baker resigned from his position and was no longer involved in Plaintiff's care after July 2011. Thus, Plaintiff is unable to establish that Defendant Baker was deliberately indifferent to his serious medical needs and summary judgment will be entered in favor of Defendant Baker, accordingly.

      An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EARL BROWNLEE,** )<br>　　　**Plaintiff** )<br>) <br>**v** )<br>) <br>**SHIRLEY R. MOORE-SMEAL, et al.,** )<br>　　　**Defendants** ) | **C.A. No. 12-322 Erie**<br><br>**Magistrate Judge Baxter** |

## ORDER

AND NOW, this 17th day of March, 2016,

It is hereby ORDERED that the motions for summary judgment filed by Defendant Reynolds [ECF No. 55] and Defendant Baker [ECF No. 59] are GRANTED, and judgment is hereby granted in favor of said Defendants and against Plaintiff on all remaining claims in this case.

The Clerk is directed to mark this case closed.

　　　　　　　　　　　　　　　　　　/s/ Susan Paradise Baxter
　　　　　　　　　　　　　　　　　　SUSAN PARADISE BAXTER
　　　　　　　　　　　　　　　　　　United States Magistrate Judge